K79VEXPC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  EX PARTE APPLICATION OF
    THE FEDERAL REPUBLIC OF NIGERIA
4   AND ABUBAKAR MALAMI, THE ATTORNEY          20 MC 169 (LGS)
    GENERAL OF THE FEDERAL REPUBLIC
5   OF NIGERIA
                                              REMOTE TELECONFERENCE
6   ------------------------------x

7
                                              New York, N.Y.
8                                             July 9, 2020
                                              10:35 a.m.
9

10  Before:

11                    HON. LORNA G. SCHOFIELD,

12                                            District Judge

13                            APPEARANCES

14  MEISTER SEELIG & FEIN
         Attorneys for Applicants
15  BY:  CHRISTOPHER J. MAJOR
         AUSTIN D. KIM
16       ALEXANDER D. PENCU

17  KOBRE & KIM
         Attorneys for Interested Party P&ID
18  BY:  JOSEF M. KLAZEN
         DARRYL STEIN

19

20

21

22

23

24

25

K79VEXPC

1          (Remote teleconference)

2          THE COURT:  Good morning.

3          (Case called)

4          THE DEPUTY CLERK:  Before we begin, I'd like to remind

5    the parties of several rules and restrictions that are in

6    effect due to the novel coronavirus.

7          First, while members of the public and press have

8    presumptive access to this proceeding, recording or

9    broadcasting of this proceeding is still prohibited.  Violation

10   of these prohibitions may result in sanctions.

11         Secondly, as we have a court reporter present today,

12   I'm going to ask counsel to please state your name before you

13   speak, each time you speak.

14         We are here before The Honorable Lorna G. Schofield.

15         THE COURT:  So good morning again, everyone.  Thank

16   you for convening in this way.

17         We are here on an application by Process and

18   Industrial Developments Limited, which has been deemed an

19   interested party in this action.  And I've reviewed your letter

20   of June 24th, 2020.  I've also reviewed the applicant's

21   response dated June 30, 2020.

22         I have the appearance sheet from Mr. Street, but I was

23   wondering who's going to be speaking on behalf of the

24   interested party?

25         MR. KLAZEN:  Good morning, your Honor.

K79VEXPC

1        My name is Joseph Klazen.  I'm a partner with Kobre &

2    Kim, and I will be speaking on behalf of the interested party.

3        And I have my associate Darryl Stein on the line as

4    well.

5        THE COURT:  Okay.  Thank you.  Welcome, Mr. Stein.

6        And who's going to be speaking for the applicant?

7        MR. MAJOR:  Good morning, your Honor.

8        Chris Major, on behalf of the applicants.

9        THE COURT:  Okay.  Great.  Thank you.

10       So this is actually an application by the interested

11   party.  As I said, I've read both the letters.  I'll hear

12   whatever you have to say briefly.

13       Let me just preface it by telling you what my thinking

14   is.

15       I didn't see citations to any law in the application.

16   And this seems like an unprecedented situation to me, where a

17   party who is not the producing party, nor the requesting party,

18   is asking for some intervention or relief as to documents that

19   have already been produced.  So based on that, I'm inclined not

20   to grant the application.  And if such relief has been granted

21   before, I'd be interested in knowing about it and knowing the

22   circumstances.

23       So Mr. Klazen.

24       MR. KLAZEN:  Yes.  Thank you, your Honor.

25       So as your Honor mentioned, our client, which I'll

K79VEXPC

1    refer to as "P&ID," since it's a little shorter than the full

2    name, was recognized by your Honor as an interested party in

3    this proceeding.  And that was a correct finding because P&ID

4    is, in fact, the target of Nigeria's investigations and

5    prosecutions in this case.

6         I won't go over the whole history, but essentially, as

7    we put it in our letter, P&ID obtained an arbitration award

8    against Nigeria, which Nigeria is now seeking to undermine

9    through a criminal investigation, and then also an application

10   to set aside the award in the UK.

11        So our client has an interest not only in the

12   proceedings generally, but also in how Nigeria is actually

13   using the discovery that it's getting, because all of the

14   discovery is being used against our client.

15        So this is not a situation where we are asserting, you

16   know, the rights of other parties or interested parties; this

17   is a situation where our client has an interest in making sure

18   that Nigeria adheres to the limitations of the discovery order

19   that your Honor granted based on the application that it filed.

20        THE COURT:  Could I ask a question?  Sorry to

21   interrupt you.  And it's a little bit more awkward interrupting

22   when we are meeting remotely like this.

23        MR. KLAZEN:  Not a problem.

24        THE COURT:  I guess one of the things I was wondering

25   is I understand that P&ID is the target or subject of the

K79VEXPC

1    criminal investigation that Nigeria is undertaking, and that

2    that was the purpose for the request, and you're objecting

3    because they are using documents elsewhere.

4         But in terms of the documents that they actually got

5    from one of the banks -- I think it was HSBC -- were those P&ID

6    account records or were they third-party account records or

7    what exactly are these documents?

8         MR. KLAZEN:  So, your Honor, the subpoenas included

9    many different requests.  But the ones that are sort of the

10   subject of the out-of-scope issue that we have raised relate to

11   four of the requests that were limited geographically, as we

12   stated in our letter.

13        Those are transactions -- so those are requests

14   calling for wire transfer data about transactions involving VR

15   Capital, which is an investor in P&ID, as well as Lismore

16   Capital, which is another investor in P&ID.

17        But these transactions are being used at this very

18   moment by Nigeria in its case against P&ID in the UK.  And --

19        THE COURT:  I understand that.

20        (Indiscernible crosstalk)

21        THE COURT:  I think you answered my question.  My

22   question was actually quite narrow, and that is, so this is

23   actually just wire transfer information showing the transfer of

24   funds?

25        MR. KLAZEN:  Yes.  That's correct, your Honor.

K79VEXPC

1      THE COURT:  Okay.  And how was the request phrased

2  that prompted the production of the wire transfer information?

3      MR. KLAZEN:  So, your Honor, this is at document 3-3,

4  was one of the exhibits that Nigeria filed with its

5  application.  And I'm referring to Exhibit 3 because that is

6  the subpoena directed at HSBC.  But the language is essentially

7  identical for each of the subpoenas directed at the ten

8  different banks.  But I will use this one as an example.

9      So there are requests numbered 4 through 7 in that

10 subpoena.  And I will just take the first one by way of

11 example.  It states that it seeks all documents concerning any

12 transactions between Lismore Capital Limited and any person or

13 entity in Nigeria.  And it is the last phrase there, "any

14 person or entity in Nigeria," that is the limitation, the

15 geographic limitation that we referenced in our letter, your

16 Honor.  I'm not saying limitation appears in each of the four

17 requests, 4 through 7 in each of the ten subpoenas.

18      THE COURT:  I understand now.  I understand your

19 out-of-scope argument.

20      I guess what I was getting at is so this was not a

21 request for P&ID account information specifically; it was a

22 request for other information with a geographic limitation.

23 And you're objecting to the fact that the geographic limitation

24 wasn't adhered to.

25      MR. KLAZEN:  Yes, your Honor.  We don't know how it is

K79VEXPC

1    that Nigeria obtained that information.  We first learned about

2    it because your Honor had granted our client's request to

3    obtain copies of whatever productions Nigeria obtained.  That

4    was part of your Honor's order.  And then we saw that there

5    were approximately 400 transactions in the P&ID -- sorry, in

6    the HSBC production that were transactions that had no

7    connection to Nigeria.

8           And this is not just a hypothetical concern about, oh,

9    they obtained more documents than they should have; but, in

10   fact, Nigeria has been using some of that very discovery

11   against P&ID in the English proceedings, claiming that these

12   transactions supposedly show wrongdoing by our client and its

13   alleged associates.

14          THE COURT:  So let me just interrupt.

15          It sounds like, based on what I read, there isn't any

16   dispute that the production was broader than was called for.

17   And so the government of Nigeria now has documents that are

18   beyond the scope of the subpoena.

19          But can you cite me any law that gives you -- meaning

20   your client -- the authority or standing, or call it what you

21   want, to ask for release from that?

22          MR. KLAZEN:  I will, your Honor.  I would cite your

23   Honor to the general proposition that, as an interested party,

24   our client has the ability to intervene or participate in these

25   proceedings, raise objections to the 1782 application, for

K79VEXPC

1    example, and request that your Honor fashion an appropriate

2    protective order.  So that's essentially -- I don't know

3    whether this precise circumstance has occurred in other cases,

4    and certainly that's something that I could look for.  But I

5    think the main point here is that because this is --

6              THE COURT:  Let me just interrupt there.

7              The fact is you haven't cited any other cases.  And I

8    presume -- I mean, you're a good lawyer from a good law firm.

9    I assume that's something that you looked for when you made the

10   current application.  Is that right?

11             MR. KLAZEN:  Well, actually, not, your Honor.  Because

12   we wrote a letter to your Honor, according to your practices,

13   which is essentially a premotion letter.  And so we did not

14   cite any case law, not because --

15             (Indiscernible crosstalk)

16             THE COURT:  My individual rule asks for citation to

17   case law.  But what I hear you saying is that you would like

18   some time to see if there's any law that you can present; is

19   that right?

20             MR. KLAZEN:  If that's something that your Honor is

21   interested in seeing, then we would appreciate that, your

22   Honor.

23             THE COURT:  Yes, I would.

24             MR. KLAZEN:  As I said, I think the case law on what

25   constitutes an interested party in 1782 proceedings makes

K79VEXPC

1    exactly the point that if the evidence sought is to be used

2    against somebody who is not necessarily the applicant or the

3    discovery target, and that party has standing to participate in

4    the 1782 to raise objections, and we think that includes asking

5    for a protective order which, of course, the Court has very

6    broad discretion in fashioning.

7                   THE COURT:  Okay.  Thank you.

8                   Let me hear from Mr. Major.

9                   MR. MAJOR:  Thank you, your Honor.

10                  Just in response to the last issue that we were

11   discussing -- and again, just for the court reporter, this is

12   Chris Major on behalf of the applicants.

13                  One of the applicants is Attorney General Malami,

14   who's the chief law enforcement officer of Nigeria.  He has

15   received documents from the banks, including HSBC.  He can't

16   turn a blind eye to the fact that there are documents that have

17   been produced to him that are relevant.

18                  We didn't obviously get a chance to preview HSBC's

19   production.  We didn't preside over HSBC's document collection.

20   But the fact of the matter is the attorney general has received

21   documents which are relevant to his ongoing investigations and

22   prosecutions.  And therefore, we obviously can't agree to

23   release relevant information that he needs for his ongoing

24   investigation.

25                  What we did agree to do at considerable time and

K79VEXPC

1    expense is to conduct a meet-and-confer process with P&ID.  And

2    we agreed to go through each one of the transactions that they

3    had flagged.  And we were in the process of working our way

4    through that -- we had been requesting information to help us

5    get through the last bundle of them -- and the meet-and-confer

6    was abandoned by P&ID.  And they filed the letter which cites

7    no basis for what's really an extraordinary ask on behalf of --

8    by P&ID, which is not that there is something that was

9    privileged that needs to be clawed back, which, of course, we

10   would abide by, but that the documents that were produced went

11   beyond P&ID's reading of the subpoena.

12          It's an extraordinary thing --

13          THE COURT:  Is there any dispute that the documents

14   are actually and not subjectively, but actually and objectively

15   beyond the reach of the subpoena?

16          MR. MAJOR:  Well, your Honor, I don't know that they

17   are beyond the reach of the subpoena.  I think that they are

18   broader than the request that counsel read over the telephone

19   today.

20          As Mr. Klazen pointed out, VR Advisory is an investor

21   in P&ID and, in fact, is controlling P&ID as best as we can

22   tell.  Because 100 percent of P&ID has been sold, we're told,

23   some time in 2017.  I don't know the particulars.  And there

24   are requests about all transactions relating to P&ID.  And some

25   of these transactions appear to be connected with the

K79VEXPC

1    investment that VR Advisory made in P&ID, which essentially was

2    an acquisition of the award, because P&ID does nothing other

3    than attempting to enforce this award and procuring the GSPA,

4    which is the underlying agreement which Nigeria maintains was

5    procured through fraud and bribery.

6         And among the documents, there are payments to the

7    daughter of the legal director, Grace Tiger, who presided over

8    the review of the GSPA originally.  And there was a payment to

9    her daughter about 11 days before she signed off on the

10   ministry of petroleum signing this fraudulent agreement.  So

11   that type of information I think is right within what we were

12   seeking in terms of discovery under Section 1782.

13        THE COURT:  Let me ask you the same question I asked

14   Mr. Klazen:  Do you know of any cases or any law which supports

15   your position, in other words, which says that this is

16   unprecedented, and that P&ID doesn't really have standing or

17   authority to make this application once the documents have been

18   produced and the subpoena has been satisfied?

19        MR. MAJOR:  So first, in the federal rules -- and the

20   federal rules, as P&ID pointed out in its initial intervention

21   pleading in this proceeding, the federal rules govern the

22   discovery here.  And there are no restrictions in -- it was in

23   the federal rules, and there's nothing in there that would

24   require the receiving party of a document production to comb

25   through the document production and see if there are any

K79VEXPC

1    documents that are outside a reading of or a construction of

2    the document requests in whether it be a document request or

3    document request appended to a subpoena.

4          So I think the federal rules is the place to start.

5          And then just in terms of --

6          THE COURT:  Let me just ask a question, sort of a

7    hypothetical question.  If this came up in an ordinary civil

8    litigation, and there were -- and there was a request for

9    documents, say, between the parties to the litigation, but the

10   documents concerned one of the parties' transactions with

11   somebody else, would that somebody else have the ability to

12   come in and challenge that?  I guess, as I think about it,

13   sometimes third parties come in and ask for protective orders

14   in the sense of confidentiality orders.  But I'm interested in

15   your view on that.

16         MR. MAJOR:  Sure.

17         So I think what would happen, the way that that would

18   happen in an ordinary case is if the producing party is under a

19   confidentiality agreement with this third party, and a lot of

20   times those types of NDAs and confidentiality agreements will

21   have a provision that says, If you are asked pursuant to a

22   lawful request to produce, let's say, a copy of this agreement

23   we're entering into, you have to give me three or five or seven

24   days' notice so I can come in and challenge the production.

25         So in that instance, let's say that party A in the

K79VEXPC

lawsuit is asked to produce this confidential agreement.  It

goes to the third party.  It says, I've been asked to produce

it; I'm required by the rules to produce it.  If you want to

take some step, go ahead.  And then that party would have to

intervene in the case and, as your Honor said, ask for a

protective order.

Now, here, we're not at all saying that we won't

undertake any efforts here.  We've already undertaken an extra

effort.  And we are willing to give or to delete,

essentially -- we're talking about a spreadsheet, your Honor,

which lists transactions, of deleting the transactions that

P&ID is concerned about, which, we were told, were comprised of

intercompany transfers among VR Advisory and affiliates, and

also payments from VR Advisory or its affiliates to employees

of VR.

And we were not given -- they wouldn't tell us, you

know, which ones were which or anything like that.  So what we

undertook was looking at each of the transactions and doing

open-source research to see, okay, it went to person A.  Did

person A ever work at VR Advisory.  If we could determine that

on an open-source basis, we said, Okay, that looks like a

payment from VR to an employee.

And those are, as we point out in the letter, the more

than 200, based on our own research, that we are willing to

delete.  And we were, have been, and remain willing to continue

K79VEXPC

1    meeting and conferring with P&ID's lawyers to get information

2    about the now hundred and some-odd that remain --

3         THE COURT:  I thought you said it was 148 or something

4    like that remaining.

5         So let me just interrupt and ask Mr. Klazen.  Mr.

6    Klazen, you obviously decided on behalf of your client not to

7    pursue any further meet-and-confer.  And do you want to just

8    talk about that a little bit?

9         MR. KLAZEN:  Sure, your Honor.

10        Well, first of all, I think -- because your Honor

11   asked for relevant case law, I think I would point your Honor

12   to the *Accent Delight* case, which opposing counsel actually

13   cited in its letter, which is a Second Circuit decision from

14   2017.  And that was a situation where the Second Circuit made

15   it very clear that the court has authority to fashion

16   appropriate protective orders, including in situations where

17   essentially the applicant in the 1782 says that it intends to

18   use discovery for one thing, but then actually uses it for

19   another foreign litigation.

20        And that case, by the way, also involved -- while I

21   think the request for a protective order was made by a party,

22   there was an intervenor in that case as well that was involved

23   in that case and had raised an opposition to the 1782 and was

24   also involved in the protective order discussions.

25        So I think that really just goes to show that in the

K79VEXPC

1   1782 context, an interested party has an interest in this.

2   Because in the UK, where Nigeria is now using this discovery,

3   contrary to what it told this Court, P&ID is the opposing

4   party.  So it's not just a situation where we are some outside

5   party that has a concern.  We are actually the respondent on

6   Nigeria's application in the UK, where it is using this very

7   discovery.  And so in that sense I think it's a little bit of a

8   different situation than in your normal U.S. discovery context.

9          The second point I would make, your Honor, is that

10  Nigeria is now essentially trying to negotiate with the Court

11  and with us, you know, what specific transactions it should be

12  able to use or not be able to use.  And we don't think that's

13  really the issue here.

14         Our concern is that Nigeria came to this Court and

15  didn't follow the proper process in that it sought

16  authorization for certain discovery based on the application.

17  And it was based on that application that we and other

18  interested parties made decisions about whether to oppose the

19  application or not oppose the application.

20         And then based on that, your Honor made the decision

21  to grant the request.  And as your Honor may recall, P&ID

22  actually did not oppose the 1782 application in the form in

23  which it had been filed.  And that was a deliberate decision.

24         But if Nigeria had made a different application where

25  it had said what it intended to do with the discovery, and

K79VEXPC

perhaps sought broader discovery than it actually put in the

subpoenas, our client probably would have taken a different

position in responding, and perhaps other interested parties,

because I think there are about 30 or so in this case who did

not appear in the proceeding --

(Indiscernible crosstalk)

THE COURT:  Often, confidentiality agreements are

agreements; they are not just orders by the court.  And it

sounds like you were engaged in the process of negotiating what

is tantamount to a protective order --

MR. KLAZEN:  I can speak to that, your Honor.

THE COURT:  -- but at some point decided to abandon

the effort.  And my question is what was your thinking there?

MR. KLAZEN:  Sure.

Well, the word "abandoned," of course, is one that's

chosen by Nigeria and used in its letter.  I don't think that's

a proper characterization.

What we requested when we first contacted opposing

counsel, once we had noticed from the production -- from the

HSBC production that there were these out-of-scope wire

transfers, is that we requested that they not use them, that

Nigeria not use them, and destroy them, you know, essentially a

clawback, if you will.

And the position as initially, sort of, it tentatively

stated, and then later in the subsequent meet-and-confer,

K79VEXPC

confirmed by opposing counsel is that Nigeria would not agree

with that; and that they would not do that.  And that instead,

their preferred approach was one where our client -- or where

we would discuss -- would have to discuss with them which of

the out-of-scope wire transfers were relevant to Nigeria's

investigation.

First of all, that is impractical; but it essentially

puts the burden on us and our client to somehow prove to

Nigeria's satisfaction that certain transactions are not

relevant.  And this is actually stated in the letter that

Mr. Major filed on the third page.  And I'll read it from here

and the first full paragraph.  It states:  Instead, P&ID should

demonstrate that the transactions are not connected with the

fraud FRN is investigating before seeking the extraordinary

relief to which it would otherwise not be entitled.

So Nigeria's position is that now that it has obtained

wire transfers that are outside of the scope of the subpoenas

that your Honor approved, that the burden is on our client to

demonstrate that the transactions are somehow not relevant to

Nigeria's investigation.

It's very unlikely that any agreement would be reached

on that in any event, because Nigeria takes a very expansive

view of its investigation.  But we are not asking your Honor to

rule on whether their investigation is proper or not.

I think the point is that they asked for specific

K79VEXPC

1    discovery, as stated in the subpoenas, and somehow obtained

2    discovery that went beyond that.  And our position is that they

3    should not be able to use it, and they should have come back to

4    the Court if they wanted to get more discovery than they were

5    originally seeking.  And decisions were made at the time based

6    on the application and based on the proposed subpoenas as they

7    were filed with the Court.  Decisions were made by our client

8    and potentially other interested parties as to what position

9    they were going to take.  And they didn't follow the right

10   process.

11            THE COURT:  Let me just ask a question.  Let's leave

12   the UK arbitration aside for the moment.

13            Let's assume for purposes of this discussion that

14   documents were produced that were beyond the scope of the

15   subpoena, but that are relevant to the criminal investigation

16   and they could make an application for those documents.

17            What is your objection to those documents being

18   produced?

19            MR. KLAZEN:  Well, our objection is, I would say, two

20   things:  First of all, that they are seeking -- that they

21   involve things that we believe are not connected to any

22   wrongdoing by our client.  And so we are concerned, as has been

23   now actually evidenced by Nigeria's actions, that they are

24   taking material outside the scope and using it to malign our

25   client in foreign proceedings.  So that's a concern that we

K79VEXPC

1    have.

2            And other interested parties -- and obviously I am

3    limited as to what I can say about discussions that were had

4    with our client and so forth.  But other interested parties

5    have looked at the application and the way that it was filed,

6    and decisions were made about what positions to take.

7            And so I think this is, in that sense -- you know,

8    what Nigeria is now trying to do is to turn this into a

9    discussion about relevance after the fact, when their requests

10   were approved in a particular way, and our client and others

11   made decisions about how to respond to that at the time.

12           So we don't think that this is the proper way to now

13   try to broaden the scope of their discovery requests by doing

14   that now, after the fact, and putting the onus on us to prove

15   that somehow they are not relevant to Nigeria's investigation,

16   which is incredibly broad --

17           (Indiscernible crosstalk)

18           THE COURT:  Okay.  I understand your argument.  And I

19   think you've made your point.

20           Can I hear briefly from Mr. Major, and then I'll

21   either rule or reserve.

22           MR. MAJOR:  Yes, your Honor.  Thank you.

23           This is Chris Major, on behalf of the applicants.

24           What P&ID just said is just not true.  Suggesting that

25   they would have taken a different tact or they seem to be

K79VEXPC

1   suggesting that others may have, there's no evidence of that

2   before the Court.

3          What there is is contrary evidence, which is JPMorgan

4   Chase did seek use restrictions from us in the form of a

5   stipulated protective order which is pending before the Court.

6   And there is an agreed use restriction on what the applicants

7   can do with the documents produced by JPMorgan Chase, which

8   does address other proceedings.  And essentially, JPMorgan

9   Chase wanted to make sure that the documents would not be used

10  in any proceeding in which JPMorgan Chase is a party.

11         So JPMorgan Chase was well aware of Second Circuit

12  law.  They knew that the documents, once produced to A.G.

13  Malami and the Federal Republic of Nigeria could be used in

14  other proceedings.  And they sought and obtained from us -- and

15  it's subject, of course, to the Court approving it -- a limited

16  use restriction.

17         The suggestion that counsel just made that parties sat

18  back because of what was presented in the papers, it's just not

19  true.  And the same goes for P&ID, which argued in its initial

20  intervention pleading that the applicants should not be able to

21  use the documents in other foreign proceedings.  We opposed

22  that in our reply, and then the Court issued an order not

23  granting P&ID that relief.

24         So the efforts that are now being undertaken again

25  were, in fact, aware to the parties at the time that the

K79VEXPC

1    application was filed and --

2            THE COURT:  Well, there really are two issues here,

3    and each of you is talking about a different one.

4            One is the issue of use in this arbitration

5    proceeding; and the other is the overproduction or the

6    beyond-the-scope production.  I understand that we may be

7    talking about the same documents, but they really are two

8    different issues.

9            So if you could just address the other issue, which is

10   the beyond-the-scope document issue.

11           MR. MAJOR:  Yes, your Honor.

12           And I think that the documents are certainly within

13   the scope of the subpoena and absolutely within the scope of

14   the discovery we described that we were seeking.

15           The federal rules are what apply here.

16           Even if the documents were found to be beyond the

17   scope of requests in the subpoena, we would have other options

18   available to us, such as serving a supplemental subpoena or

19   amending the subpoena to obtain the documents.  The relevance,

20   at the end of the day, is the key issue.

21           And the hyper-technical reading of the subpoena

22   doesn't solve P&ID's issue, which is A.G. Malami, through these

23   efforts under Section 1782, is finding evidence supportive of

24   the fraud, that the fraud occurred.  And that's at the heart of

25   what P&ID is trying to do, is prevent and obstruct the

K79VEXPC

1    investigation.

2          We remain willing to work through the 148 transactions

3    and gain some comfort that some or all of them may be not

4    relevant.  Just being beyond the scope of the written

5    request --

6          THE COURT:  So the point that Mr. Klazen made, which

7    is somehow that burden is being put on them to determine

8    relevance, and they are not really in a position to do that,

9    are you saying that you'd be willing to meet and confer and,

10   based on factual explanations, make your own determination of

11   relevance and then go from there?

12         MR. MAJOR:  Yes.  We need further information at this

13   point about those 148 transactions.  And we can meet and confer

14   and gain further information, and then hopefully reach

15   agreement on all of them, whether they are relevant or

16   irrelevant.  And I think that would substantially narrow that

17   issue.

18         THE COURT:  Okay.  So here is what I would like to

19   do --

20         MR. KLAZEN:  Your Honor, may I respond?

21         THE COURT:  No, I'm going to rule now, just because

22   I've heard from you both a lot, and I plan to propose that I

23   hear a little bit more.  So let me just tell you what I think

24   we should do.

25         So what I would like is for you to meet and confer

K79VEXPC

1    again, with the understanding that any relevance

2    determination -- because it sounds like that's what we're

3    talking about, any relevance determination be made by Nigeria

4    and not P&ID; and that you address yourself to whatever

5    documents are in dispute; and that you report that to me by --

6    let's say by the 15th, which is Wednesday of next week.  And so

7    it's just under a week.

8            And then to the extent that there are any remaining

9    disputes, if you could get me simultaneous letters on that,

10   let's say by the 21st, and then I will endeavor to rule based

11   on that and only as to what remains in dispute.  Okay?

12           I'll put that in a written order.

13           But I think it was useful for you to hear each other's

14   positions, but also very useful for me to hear what you have to

15   say.  So I look forward to hearing that you've resolved, I

16   hope, some good part of this, if not all of it.

17           MR. KLAZEN:  Your Honor, thank you.

18           May I ask one question?

19           THE COURT:  Yes.  Who's speaking please?

20           MR. KLAZEN:  Yes.  Sorry.

21           This is Joseph Klazen, for P&ID.

22           THE COURT:  Yes.

23           MR. KLAZEN:  Your Honor mentioned that there were --

24   and they've correctly noted that there are essentially two

25   issues:  One is the overbroad discovery, and the other is the

K79VEXPC

1    use of the discovery in proceedings that were not disclosed in

2    the application.

3          And so is that an issue then that, if that is not

4    resolved, we should also report to you on by the 21st?  Is that

5    what your Honor contemplates?

6          THE COURT:  Whatever your remaining issues are,

7    although -- I mean I think on the issue of use in other

8    proceedings, you pretty much have addressed that in your

9    letters.  And you don't have to repeat anything that's in your

10   letters, the ones that you've already sent me.  You can just

11   say you're incorporating those arguments by reference.  I will

12   undoubtedly look at them again closely.  So this is just a

13   supplemental submission; don't make it repetitive.

14         And I'll also put a page limit on it.  Let's just say

15   that it's going to be limited to four pages.  And they should

16   be letter submissions.  Okay?

17         MR. KLAZEN:  Thank you, your Honor.

18         THE COURT:  All right.  Thank you.

19         We're adjourned.

20         I'll issue an order so this is clear.

21         MR. KLAZEN:  Thank you, your Honor.

22                          *    *    *

23

24

25